## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MATTHEW TUFT and DONNA TUFT, husband and wife,** | : | |
| | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:20-643** |
| **v.** | : | **(JUDGE MANNION)** |
| **FRANK A. GIGLIO, THE FRANK A. GIGLIO ("LILLY") FAMILY TRUST and GARY A. WELLS, SR.** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Pending before the court is a motion for summary judgment filed on behalf of defendant Gary A. Wells, Sr. (Doc. 28). Upon review of the motion and related materials, the defendant's motion for summary judgment will be **DENIED**.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp*., 901 F.2d 335, 340 (3d Cir.

1

1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Casualty & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby, Inc.*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on a summary judgment motion, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more

than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; *Jakimas v. Hoffman LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

By way of relevant background, on February 7, 2020, the plaintiffs filed a writ of summons initiating the instant action in the Court of Common Pleas of Monroe County. The defendants removed the action to this court on April 21, 2020. (Doc. 1). The plaintiffs filed a complaint on May 20, 2020. (Doc. 3).

In their complaint, the plaintiffs allege that, on February 9, 2018, plaintiff Matthew Tuft ("Mr. Tuft") was on a property owned by defendant

Giglio[1] and leased by defendant Wells. The plaintiffs allege that defendant Wells was in possession and control of the property and was responsible for all maintenance and improvements on the property. Due to the negligent condition of the property, it is alleged that on the day in question Mr. Tuft, a business invitee at the time, slipped and fell on an undetected patch of ice on the premises. The plaintiffs allege that defendant Wells failed to adequately remove snow and/or ice which had accumulated on the property. In addition to Mr. Tuft's negligence claim, a claim for loss of consortium is alleged on behalf of his wife, plaintiff Donna Tuft.

According to the undisputed statement of facts submitted by defendant Wells, he leased the property at issue from defendant Giglio in about 2017 and lived at the property for a little more than two years at the time of the incident. Defendant Wells hired Rob Ziccarelli to remove snow and ice from the premises when necessary.[2] Defendant Wells would not

---

[1] Frank A. Giglio and the Frank A. Giglio ("Lilly") Family Trust were originally named as defendants in this action. However, in accordance with this court's order dated February 25, 2022 (Doc. 37), judgment was entered in favor of these defendants and against the plaintiffs. (Doc. 38).

[2] The plaintiffs deny this fact arguing that no evidence of an agreement has been produced. Initially, the testimony of defendant Wells is evidence of an agreement. Any such agreement need not have been reduced to writing. Moreover, the plaintiffs were free to question defendant Wells and/or Mr. Ziccarelli regarding the terms of the alleged agreement.

need to call Mr. Ziccarelli, he had a "standing order" to remove the snow and ice and salt the walkways whenever there was bad weather. If it snowed more than once during a day, Mr. Ziccarelli would come more than once that day. Defendant Wells could not recall a time when Mr. Ziccarelli did not come to remove snow and ice in bad weather.

According to defendant Wells's testimony, he recalled it had snowed on February 8, 2018, the night before Mr. Tuft alleges he slipped and fell on the property.[3] Defendant Wells believed it snowed off and on during the night and that there was approximately four to six inches of snow. Early in the morning of February 9, 2018, approximately 7:00 to 8:00 a.m.,

---

[3] The plaintiffs deny this statement referencing the report of their expert. (Doc. 34, Ex. A). However, upon review of the record, the plaintiffs' expert report is being stricken and will not be considered in relation to the instant motion. To this extent, the court issued a scheduling order on August 25, 2020, setting April 1, 2021 as the deadline for the plaintiffs' expert reports. (Doc. 19). Upon request of the plaintiffs, this deadline was extended until July 14, 2021. (Doc. 22, Doc. 23). Defendant Wells represents in his filings that the plaintiffs never provided any expert reports to him on or before the deadline set by the court. Instead, the first that an expert report was produced, it was filed with the plaintiffs' brief in opposition to the defendant's motion for summary judgment on August 9, 2021, well after the deadline. This, despite the fact that the report is dated April 15, 2021, three days after the plaintiffs requested additional time to produce the report. The plaintiffs have in no way challenged the defendant's claim that the expert report is untimely or otherwise attempted to explain why the expert report was never produced. The report is therefore being stricken as untimely.

defendant Wells testified that Mr. Ziccarelli came to plow the driveway and clear the sidewalks. Mr. Wells knew this because he would hear him outside when he came to clear the property.

On the day in question, defendant Wells did not leave the house. He testified that he ordered food for delivery and had the front door open waiting for the delivery. At some point, he glanced out the door from the kitchen and observed Mr. Tuft. He went to the front door to get the food from Mr. Tuft, who handed it to him and told defendant Wells that he had fallen.

As for Mr. Tuft, he testified that on the date of the incident, he was delivering food to a detached private residence. It was approximately six o'clock in the evening and was dark at the time. Mr. Tuft testified that it had snowed earlier in the day.[4] Although he could not recall how much, Mr. Tuft testified that it was not a big accumulation of snow.

Mr. Tuft testified that he had been to this particular property on another occasion and "kind of knew the routine." When he arrived at the property, he pulled his car into and up the driveway to the garage door. He

---

[4] See n.3. Moreover, upon review of the transcript of Mr. Tuft, this is, in fact, his testimony.

had no trouble doing so and did not see any ice or snow on the driveway as he pulled in. He got out of his vehicle taking no special precautions. He walked approximately ten steps on the driveway with no trouble before getting to the walkway. He walked on the walkway from the driveway approximately twenty to twenty-five steps to the front door. Although it was dark outside, Mr. Tuft testified that the walkway was lit by artificial lights from the house, and he was able to see where he was walking and putting his feet. On the walkway was a light dusting of snow. Mr. Tuft testified that he fell when he approached the front door. He stated this was the first he knew there was ice on the sidewalk, as it was hidden beneath the dusting of snow. He described the ice as clear and approximately an inch thick "just by eye."

In his motion for summary judgment, defendant Wells argues that the "hills and ridges" doctrine is appliable in this case and precludes recovery by the plaintiffs. The plaintiffs argue, on other hand, that the doctrine is not applicable because defendant Wells has not established that the conditions at the time of Mr. Tuff's fall were "generally slippery" which is required for the doctrine to apply.

Under Pennsylvania law[5], there is no absolute duty upon a landowner to keep a premises free of snow and ice at all times. *Rinaldi v. Levine*, 176 A.2d 623 (Pa. 1962). "The 'hills and ridges' doctrine is a long[-]standing and well entrenched legal principle that protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." *Convery v. Prussia Associates*, 2000 WL 233243 *1 (E.D. Pa. 2000)(quoting *Morin v. Traveler's Rest Motel, Inc*., 704 A.2d 1085, 1087 (Pa. Super. 1997)).

The 'hills and ridges' doctrine provides "that an owner or occupier of land is not liable for general slippery conditions, for to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere. Snow and ice upon a pavement create merely transient danger, and the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it when it is in a dangerous condition." *Saris v. Charles*, 67 Pa.D&C.4th 545, 550 (2004)(quoting *Gilligan v. Villanova University*, 584 A.2d 1005, 1007 (Pa. Super. 1991)).

---

[5] There is no dispute that Pennsylvania law applies in this diversity action.

The 'hills and ridges' doctrine is applicable only in situations where the ice is "the result of an entirely natural accumulation." *Williams v. United States*, 507 F.Supp. 121 (E.D. Pa. 1981)(quoting *Bacsick v. Barnes*, 341 A.2d 157, 160 (Pa. Super. 1975)). The doctrine does not apply where the ice is localized and there are not general slippery conditions in the community, or when an icy condition is caused by the defendant's neglect, such as where a defective hydrant, water pipe or drain caused the icy condition. *Bacsick, supra.*

Here, the threshold issue to be resolved is whether the 'hills and ridges' doctrine even applies in this case. Upon review, the court finds that there is a genuine question of fact as to whether it does. Initially, as discussed, for the doctrine to apply, the icy conditions at issue must have been the result of "an entirely natural accumulation, following a recent snowfall." *Bacsick,* 341 A.2d at 160*.* The doctrine does not apply where there is a localized patch of ice, as opposed to general slippery conditions in the community, or where the icy condition is "of artificial origin." *Williams*, 507 F.Supp. at 123. Thus, snowfall immediately preceding an accident would make the application of the "hills and ridges" doctrine more appropriate. *See Sprinkle v. AMZ Mfg. Corp.*, 2013 WL 2338488, at *3 (M.D.Pa. May 29, 2013). But, if there has been human interaction with the

precipitation which has caused some ice or snow to accumulate, the doctrine is inapt. *See id.* (citing *Harvey v. Rouse Chamberlin, Ltd.*, 901 A.2d 523, 527 (Pa.Super.2006)).

In this case, there is a question as to whether the icy conditions which resulted in Mr. Tuft's fall were the result of a natural accumulation or were the result of the snow removal which took place at the property on the morning in question. Mr. Wells testified that it snowed approximately four to six inches throughout the night prior to Mr. Tuft's fall. Although he was unsure of the amount of accumulation, Mr. Tuft testified that it had been lightly snowing on and off on the day in question. This may favor application of the doctrine. However, Mr. Wells also testified that Mr. Ziccarelli came to plow and clear the walkway of the snow at approximately 7:00 to 8:00 a.m. on the day of the plaintiff's fall. Where human intervention has led to the dangerous accumulation, the law ceases to consider it within the ambit of the hills and ridges doctrine. *Harvey v. Rouse Chamberlin, Ltd.,* 901 A.2d 523, 527 (Pa.Super.Ct. 2006); *Bacsick,* 341 A.2d at 160. Such human intervention could render the icy conditions of "artificial origins", unless it could be shown that there were intervening natural conditions which caused a thaw and refreeze.  In this case, the record is simply unclear. On the record before the court, the threshold issue of whether the "hills and

ridges" doctrine applies here simply cannot be answered with any certainty. As defendant Wells's motion relies solely on the application of this doctrine, his motion for summary judgment will be denied. An appropriate order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED**: March 7, 2022
20-643-01

11